## McALEXANDER et al. v. LUDTKE.
### No. 10954.

Court of Civil Appeals of Texas. Galveston.
March 28, 1940.

Rehearing Denied April 18, 1940.

William Grimes, of Houston, for appellants.

124

Morris E. Ludtke and W. M. Johnson, both of Houston, for appellee.

GRAVES, Justice.

This amended general statement, thought to be correct as such, has been taken from the appellee's brief:

"The suit was brought by appellee, plaintiff below, to have two instruments, in the form of deeds, reformed to be mortgages, as claimed by him to have been intended by the parties. Appellee alleged that said instruments were given as mortgages to secure a certain indebtedness, which he owed to defendants, and pleaded a tender to defendants of such amount which he owed to them.

"Appellant filed an answer, alleging that such instruments were absolute conveyances, and then filed a cross-action setting up that, in the alternative, if the instruments be held to be mortgages, to secure the indebtedness owing by plaintiff to defendant, Mary E. McAlexander, that she have judgment for her debt, together with attorney's fees, and an order of the court foreclosing her liens on the property described in the instruments.

"The case was submitted to the jury on five special issues, all of which were found in favor of plaintiff. Immediately after the verdict of the jury and before the judgment of the court was entered, the court permitted appellee to file a trial-amendment, praying for the further relief of having the instruments, in the form of deeds, cancelled, annulled, set aside as deeds, and held to be of no further force and effect, and that all clouds cast upon plaintiff's title to the property by reason of such two instruments having been placed of record be cast and removed. The court having computed the proper interest on the two notes, and a paving-lien judgment owing by appellee to appellant, and having credited such total indebtedness with the several amounts which it found the testimony showed was paid to and received by appellant, entered judgment for plaintiff, and found that appellant was entitled to $1748.44 out of the money on deposit with the district clerk, J. W. Mills, and that appellee was entitled to the balance of the money on deposit, to-wit, $502.44, together with the title and possession of the unsold land, and that the instruments involved be cancelled, annulled, set aside, and held for naught."

From such action taken below, this appeal regularly proceeds.

Mrs. Mary E. McAlexander is the sole appellant in interest, her husband having joined her pro forma only.

The described judgment was entered not alone upon the jury's verdict, but as well upon independent findings of the court itself from both the pleadings and evidence, the latter being therein recited to have been undisputed in support of these added findings, which were fully detailed in the decree.

It is obvious that the controlling issue in the whole controversy was one of fact— that is, whether or not the two deeds so sued upon had, in their transactions concerning them, been intended by the parties to be mortgages securing indebtedness owing to the appellant by the appellee, although they both ran in terms in the form of absolute conveyances; this question, inclusive of all its essential elements, was appropriately submitted to and answered by the jury, as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that when the deed in question herein dated April 8, 1936, was delivered that it was agreed between plaintiff and F. L. McAlexander that said deed was to be held as security for the debt owing by plaintiff to Mrs. Mary E. McAlexander?"

Answer: "We do".

"Special Issue No. 2: Do you find from a preponderance of the evidence that at the time of the delivery of the deed dated April 8, 1936, it was agreed between plaintiff and F. L. McAlexander that the deed of April 6, 1936, was to be returned to the plaintiff?"

Answer: "We do".

"Special Issue No. 3: Do you find from a preponderance of the evidence that it was agreed between the plaintiff and F. L. McAlexander at the time of the delivery of the deed on April 8, 1936, that the plaintiff was to have an option to repurchase the property described in said deed?"

Answer: "We do".

"Special Issue No. 4: Do you find from a preponderance of the evidence that it was agreed between plaintiff and F. L. McAlexander that the cancellation of the grocery bill and the deed dated April 8, 1936, were not given in cancellation and

full satisfaction of the indebtedness owed by plaintiff to Mrs. Mary E. McAlexander?"

Answer: "They were not given in cancellation and full satisfaction of the indebtedness."

"Special Issue No. 5: Do you find from a preponderance of the evidence that after the deed dated April 8, 1936, was executed the plaintiff was still obligated to pay the indebtedness he owed to Mary E. McAlexander prior to April 6, 1936?"

Answer: "He was still obligated to pay the indebtedness."

A careful examination of the record and statement of facts shows that no successful attack has been made upon this verdict in any particular; indeed, without being called upon to detail the evidence upon which that conclusion has been arrived at, this court is clear in finding that there was full warrant in the testimony for every answer thus returned; the appellant herself did not testify upon the trial at all, nor was there presented in her behalf any other witness than her son and active representative in all the business transacted in her behalf with the appellee, F. L. McAlexander; whereas, on the other side, many different witnesses, who had knowledge of the dealings between the parties upon which they testified, detailed—along with and in support of the appellee himself—the successive transactions leading up to and culminating in, as well as following, the two deeds that so formed the main subject matter of the litigation; appellant, therefore, in substantial effect, merely raises on this appeal a legal question upon what must be considered fully established facts.

In doing that, she contends, among other things, several of them relating to and challenging certain procedural features:

(1) That the court prejudicially erred in permitting the filing of appellee's trial amendment, in the circumstances recited in the statement quoted supra, in that such belated filing constituted a prohibited changing of the cause of action, after the rendition of a verdict, from one to reform the deeds into one to cancel them.

■ This presentment is overruled without extended discussion, since, under such authorities as Bain v. Coats, Tex.Civ.App., 228 S.W. 571, it is obviously unsound, when applied to facts like those here obtaining; in addition to those found by the jury in its quoted verdict, the trial court has found, on sufficient evidence, that there was then in its registry sufficient money belonging to the appellee to pay the appellant all the debts he owed her at that time; further that, the two instruments had at all times material been agreed between the parties not to be placed upon the records, but instead to be held by the appellant as mere security for the indebtedness so due her, which arrangement had been violated by the placing of the two documents upon the county records, thereby enabling the appellant and her co-owner of the property to make actual sales of part of it upon the basis of their being in fact deeds; hence the trial amendment under these attending facts did not change the nature of appellee's cause of action, but in effect merely broadened his prayer so as to cover the additional relief of having the pseudo instruments cancelled as such deeds and the cloud cast—by their having been recorded—on the appellee's title, removed. Such action was consequently within the sound discretion of the court, especially since no new evidence than that already fully before the court was required to support it.

(2) That there was a material and mutually-destructive conflict between the jury's answers to quoted special issues Nos. 1 and 3, in that under the former the instrument was found to have been given as security for a debt owing by the grantor to the grantee, whereas by the latter it was found that the grantor had been given an option to repurchase the land, which was inconsistent with its being only security for a debt.

In this connection, appellant argues at great length that the inhering option to the appellee to repurchase the property, as a matter of law, made the transaction evidenced by the two deeds a conditional sale, and not a mortgage.

■ This also, it is thought, is a clear non sequitur from the facts involved; this court finds no such conflict, but, upon the contrary, regards the answers to these two issues to be entirely consistent with each other, and that No. 3, in the setting to which it must be applied, amounts to merely supplementing the basis on which the instrument is properly characterized as a mortgage. Especially is this made clear by succeeding findings 4 and 5, to the effect that the parties—who were fully competent to do so—agreed at all times

between themselves that the indebtedness of appellee to appellant was not being cancelled by these instruments, but that it was expressly, as such, to be continued, to persist, notwithstanding the forms of these instruments, and that the appellee was to still remain obligated to pay such full debt.

Indeed, it seems plain that, under the facts found by the jury alone, to say nothing of the supplementary ones by the court, no other proper judgment than one declaring such instruments to be mortgages to secure the indebtedness could have been rendered; the right left in the appellee to repurchase the property did not perforce of its being recited in the instrument, the whole effect of which was a mortgage, necessarily change that instrument into a conditional sale; this for the reason that the test as to whether an instrument in the form of an absolute deed is a mortgage, or a sale, always is whether or not there is a continuing obligation on the grantor to pay the indebtedness involved; these authorities fully support the conclusion stated, as applied to what are thought to be analogous facts: Perez v. Houston & T. C. R. Co., Tex.Civ.App., 5 S.W.2d 782; Stiles v. Union, Tex.Civ. App., 1 S.W.2d 947; Chicago, R. I. & G. R. Co. v. Bernard, Tex.Civ.App., 275 S.W. 505; Southwest Bitulithic Co. v. Dickey, Tex.Civ.App., 28 S.W.2d 264; Republic Production Co. v. Collins, Tex.Civ.App., 41 S.W.2d 100; Wichita County v. Tittle, Tex.Com.App., 41 S.W.2d 11; Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 110 S.W.2d 108; Texas & P. R. Co. v. Gillette, Tex.Civ.App., 100 S.W.2d 170; Herring v White, 6 Tex.Civ.App. 249, 25 S.W. 1016; Morrow v. Gorter, Tex.Civ. App., 217 S.W. 164; Holmes v. Tennant, Tex.Com.App., 231 S.W. 313.

Especially do the principles applied in these authorities seem to rule this cause, because here the money with which to pay appellee's obligation to appellant—so obtained by artifice at least on her behalf—was actually in the registry of the court trying the case and under its control as a consequence of a jury's determination that the parties had never at any time intended to maintain any other relation than that of mortgagor and mortgagee, as affected the property that money constituted the proceeds of a sale of by appellant alone.

(3) Through a number of propositions appellant further attacks the independent findings of the court itself, referred to supra, dealing with the monetary accounts between the parties, the alleged extension of the vendor's lien note involved, and appellee's declared-upon tender of all amounts he owed appellant prior to the filing of her cross-action below in this cause.

■ The answer to this presentment is that they dealt with mere subsidiary rather than controlling causes of action, or grounds of defense, that none of them were requested to be submitted as issues-of-fact by either party; wherefore, especially as the evidence upon all of them seems to have been undisputed—as the judgment itself recites—the court had the power to make them in support of the judgment it otherwise was required to render. These authorities support a holding to that effect: Wichita Falls, etc., v. Pepper, Tex. Sup., 135 S.W.2d 79; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; Newberry v. Johnson, Tex.Civ.App., 274 S.W. 667; Coon v. Ewing, Tex.Civ.App., 265 S.W. 481; Article 2190, Revised Civil Statutes of Texas 1925, Vernon's Ann.Civ.St. art. 2190.

In other words, the one dominating issue in the whole cause being, as stated supra, whether the instruments forming the subject matter of the suit were mortgages or absolute conveyances, all of these added determinations by the court itself dealt with details, which at most were evidentiary of or subsidiary to that one determinative question; hence the court was clearly empowered—especially in the absence of any request for the submission of any of them to the jury—to determine them all in such manner as to support the judgment it was otherwise bound to render, there being at least sufficient evidence to support them, which fact the appellant does not question.

The state of facts is voluminous, the contest having been waged over the whole gamut of dealings between the parties with reference to the same lands for years, which were finally comprehended within and evidenced by the two instruments that so became the subject matter of this suit, and the jury's arbitrament—upon sufficient evidence—settled their relationship as having been that of mortgagor and mortgagee; it therefore was competent for the trial court to mop up such incidental and subsidiary matters and details as it found—without objection from either party—

flowed from such sustained relation between them.

No reversible error having been pointed out, the judgment will be affirmed.

Affirmed.